MEMORANDUM. — Mr. Justice LINCOLN, having been elected, in April, 1825, governor of the commonwealth, resigned his seat on the bench; and his Honor. MARCUS MORTON, of Taunton, in the county of Bristol, lieutenant governor, having been ap-.ointed to fill the vacancy, resigned the office of lieutenant governor, and on the 5th of July, at a session held by adjournment, took his seat as a justice of this Court.

## JOSEPH HARRIS Junior *versus* JOHN AIKEN *et al.*, Principals, and WARD JACKSON *et al.*, Trustees.

One summoned as trustee in a process of foreign attachment, disclosed that the principal defendant had covenanted to build a house for him, and that he had covenanted to pay such defendant certain sums at certain stages of the work; that he had generally paid before the instalments became due, but that he had no means of ascertaining whether at the time of the service of the writ the payments were in advance of the work or not. *Held*, that he should not be charged as trustee.

JACKSON and LINCOLN, the supposed trustees, in their answers, disclosed an agreement made on the 21st of Decem-

Harris
*v.*
Aiken.

ber, 1322, between themselves and Aiken & Cushing, the principal defendants, wherein it was stipulated that Aiken & Cushing, who were housewrights, should finish by the 1st of August a dwellinghouse which they had begun to erect or and of one Rice, but which at the time of the agreement had been purchased by Jackson & Lincoln, and that they should find all the materials, except lumber, and that Jackson & Lincoln should pay them certain sums of money at different stages of the work, and furnish the lumber which should be necessary; that if the house should be completed according to the agreement, Jackson & Lincoln should sell the house and land, provided such a price could be obtained as would indemnify them for the purchase money paid to Rice, the expenses incurred by them in pursuance of the agreement, and all sums which should be due to them from Aiken & Cushing, and after indemnifying themselves out of the proceeds of the sale, should pay over the surplus, if any, to Aiken & Cushing; and that if Aiken & Cushing should refuse or unreasonably neglect to proceed in completing the house, Jackson & Lincoln might take upon themselves the completion of it, and in such case, all the covenants on their part not performed should be void. They further answered, that the house was completed in June, 1823, and that the house and land were sold in October following, for a sum exceeding their demands against Aiken & Cushing; that the plaintiff's writ was served on them on the 17th of January, 1822, and that ten months afterwards, when the interrogatories were put to them, they had no means of ascertaining what was the quantity of materials furnished or what was the state of the work at that time; that their accounts, which they offered for inspection, would show the times when advances were made by them to Aiken & Cushing, but that they had no means of ascertaining whether instalments were due at those several periods; that in their opinion the several instalments were paid as soon as they were due, and sometimes sooner; that payments were sometimes made without ascertaining whether the work was in such a state of forwardness as to entitle Aiken & Cushing to demand them; and that it was the intention of the respondents, that the work should always be of more value than their advances

and that generally it was so, but that there were periods when they felt anxiety lest they had advanced too much.

W. J. Spooner, for the supposed trustees, argued, that before the completion of the house the interest of Aiken & Cushing was contingent, and so not liable to the trustee process. *Davis* v. *Ham & Trs.*, 3 Mass. R. 33; *Wentworth* v. *Whittemore & Tr.*, 1 Mass. R. 471. Supposing that the inability of Jackson & Lincoln to deny positively that the value of the work was at any time greater than the advances made by them, must be taken as an admission that it was greater at the time when they were summoned, it does not affect the contingency upon which Aiken & Cushing's claim to an eventual balance rested, namely, their completing the whole contract by a given time. So if it must be considered that an instalment was due, it does not follow that Jackson & Lincoln must be charged as trustees. On a mere covenant like this to pay money, there is not that indebtment which the trustee law contemplates. There is a promise to pay, and an action may be sustained to recover *damages* for the breach of it, but there is no debt independent of the covenant. The right of Aiken & Cushing was to receive the money for the purpose of building therewith a house for Jackson & Lincoln, and the plaintiff cannot attach that right without subjecting himself to the corresponding obligation. *Owen* v. *Estes & Trs.*, 5 Mass. R. 330; *Brigden* v. *Gill & Tr.*, 16 Mass. R. 522.

S. D. Parker, for the plaintiff, contended that it was manifest by the answers of the respondents, that at the time of the service of the writ they had in their hands money or specific articles of lumber and materials, or both money and materials, of the principal defendants; and that, at all events, they had not discharged themselves on their answers, and therefore they must be held trustees, according to the case of *Sebor* v. *Armstrong & Tr.*, 4 Mass. R. 206.

PARKER C. J., in giving the opinion of the Court, said in substance, that there was nothing in the answers to charge the respondents as trustees. The question raised was, whether the work was in advance of the payments, so as to make them chargeable  It does not appear that it was. They an-

Harris
*v.*
Aiken.

swer that in general they had paid in advance, but they cannot say that at no time was the balance against them. It was contended that they must discharge themselves, and the case of *Sebor* v *Armstrong & Tr.* was referred to, where the trustee answered that he had accepted a draft in favor of the principal defendant which he thought was payable to order The Court said that as he did not state the fact positively, and did not ask for time to make inquiry whether the draft was or was not payable to order, he should be charged. But this case is totally different; and though we wished for a more definite answer, there is good reason to believe a more definite one could not be given. For any sum which might be due from Jackson & Lincoln at their final settlement with Aiken & Cushing, they would be trustees, if summoned at that time.[1]

*Trustees discharged.*

---

[1] See *Cleveland* v. *Clap,* 5 Mass. R. 204, 205. Though the answer of a trustee, where the language is doubtful, is to be construed most strongly against himself, yet it is not to receive a construction against the fair and natural import of the language taken all together. *Kelly* v. *Bowman,* 12 Pick. 383. In *Gordon* v. *Coolidge,* 1 Sumner, 537, it is held not to be generally true, that persons sued as trustees under the foreign attachment laws in Maine, are to be charged as such, unless they clearly discharge themselves upon their ex amination. On the contrary, the court can adjudge them trustees, only when upon the examination there is clear and determinate evidence, free from rea sonable doubt, that they have property in their hands, of which they ought to be adjudged the trustees of the debtor